PS3 (12/05-Rev. for PACTS 6/11)                                    Jordan  Wolfe, / 0867 8:22CR00080-001

## *CONFIDENTIAL*

Pretrial Services Reports are made available to Defense Counsel and the Government. The Pretrial Reports are not public record, are not to be reproduced or disclosed to any other party, and shall remain confidential as provided in Title 18 U.S.C. § 3153(c)(1).

## PRETRIAL SERVICES REPORT

| District/Office<br>**District Of Nebraska/2 - Lincoln** | Charge(s) (Title, Section, and Description)<br>**Count 1:** Title 18 U.S.C. § 111(a)(1) - Assault on an Officer with Physical Contact and Bodily Injury |
|---|---|
| Judicial Officer<br>**Honorable Cheryl R. Zwart**<br>**U.S. Magistrate Judge** | |
| Docket Number (Year – Sequence No. – Def. No.)<br>**0867 8:22CR00080-001** | |

## DEFENDANT

| Name<br>**Wolfe, Jordan** | Date of Birth<br>05/09/1998 (23) | Employer/School<br>**Unemployed for 3 years, 2 months** | |
|---|---|---|---|
| Other Names on Charging Document<br>**N/A** | | | |
| Address<br>1281 U.S. 75<br>Macy, NE 68039<br>712-317-7916 | | Employer/School Address | |
| At Address Since<br>06/09/2021 | Time in Community of Residence<br>20 years | Monthly Income<br>$0 | Time with Employer/School |

## INTRODUCTION:

The defendant is currently serving a term of supervised release in case 4:19CR03010. The defendant is pending revocation in this case and the violation of supervised release hearing is set for July 8, 2022, before The Honorable John M. Gerrard. Due to the defendant being detained in this case, a pretrial services interview was not conducted.

An initial appearance regarding supervised release revocation proceedings was held before Magistrate Judge Cheryl R. Zwart on April 1, 2022, and the defendant was ordered detained.

Attached is the presentence investigation related to case 4:19CR03010 for the Court's review.

## BACKGROUND:

The following information was provided by Mr. Wolfe's current supervising officer in case 4:19CR03010:

Family Responsibilities: Jordan is not married but is expecting a child with his girlfriend, Shania.

Employment: Jordan is currently not employed but has been working for the Tribe picking up trash, sporadically.

Page 1

Treatment: Jordan is not in a treatment program currently. Jordan reports struggling with alcohol and would like to be evaluated and get into a treatment program.

**ASSESSMENT OF NONAPPEARANCE:**

The defendant poses a risk of nonappearance for the following reasons:

1. Substance Abuse History
2. Criminal Activity while under Supervision
3. Lack of Verifiable, Legitimate Employment
4. Pretrial, Probation, Parole, or Supervised Release Status and Compliance
5. Unstable/Unsuitable Living Situation

**ASSESSMENT OF DANGER:**

The defendant poses a risk of danger for the following reasons:

1. Nature of Instant Offense
2. Substance Abuse History
3. Pretrial, Probation, Parole, or Supervised Release Status and Compliance
4. Violent Behavior History
5. Criminal Activity while under Supervision
6. History of Weapons Use
7. Pattern of Similar Criminal Activity History

*This pretrial report has been prepared pursuant to 18 U.S.C. 3154(1). The recommendation is provided for the consideration of the Court and is separate from such legal findings as weight of the evidence [18 U.S.C. 3142(g)(2)] or rebuttable presumptions for detention [18 U.S.C. 3142(f) and (e)].*

**RECOMMENDATION:**
Pretrial services considers the defendant to be a risk of nonappearance and a danger to the community. It is felt there is no condition or combination of conditions present to address these concerns, therefore it is respectively recommended the defendant be detained pending trial in this matter.

| | Date<br>4/21/2022 |
|---|---|
| *Kate A. Eubanks*<br>Kate A. Eubanks<br>U.S. Probation and Pretrial Services Officer | |
| Reviewed and approved by<br>Jeff A. Anthens,<br>Supervising U.S. Probation and Pretrial Services Officer | |

041114

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **REVISED** |
| **vs.** | ) | **PRESENTENCE INVESTIGATION REPORT** |
| | ) | |
| | ) | **4:19CR03010** |
| **JORDAN  WOLFE** | ) | |
| | ) | |

**Prepared for:**  The Honorable John M. Gerrard
Chief U.S. District Judge

**Prepared by:**  Mindy Bare
U.S. Probation and Pretrial Services Officer
Lincoln, NE
402-437-1683
Mindy_Bare@nep.uscourts.gov

**Assistant U.S. Attorney**  |  **Defense Counsel**
Tessie L. Smith  |  John C. Vanderslice
100 Centennial Mall North  |  100 Centennial Mall North
Suite 487, Federal Building  |  Suite 112
Lincoln, NE 68508  |  Lincoln, NE 68508
(402) 437-5399  |  (402) 437-5871
tessie.smith@usdoj.gov  |  john_vanderslice@fd.org

**Sentence Date:**  November 1, 2019

**Offense:**  <u>**Count 1**</u>:
Assault with A Dangerous Weapon with Intent to Do Bodily Harm
[18 U.S.C. § 113(a)(3)] Not more than 10 years imprisonment/$250,000
fine (Class C Felony)

**Arrest Date:**  January 25, 2019, federal warrant
July 15, 2019 (PTS violation, USM custody, Saline County Jail)

**Release Status:**  January 25, 2019 (Thurston County Jail)
January 28, 2019 (Pretrial Release)
July 25, 2019 (Pretrial Release)

**Detainers:**  None.

**Codefendants:**  None.

**Related Cases:**  None.

**Date to Counsel: September 17, 2019**  **Date to Court: October 2, 2019**

**WOLFE, Jordan**

## Identifying Data:



| | |
|---|---|
| **Legal Name:** | Jordan Wolfe |
| **Date of Birth:** | May 9, 1998 |
| **Age:** | 21 |
| **Race:** | American Indian or Alaska Native |
| **Hispanic Origin:** | Non-Hispanic origin |
| **Sex:** | Male |
| | |
| **SSN:** | 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 |
| **FBI #:** | 5X0CLT06R |
| **USM #:** | 30960-047 |
| **Driver's License #:** | None |
| **Other IDs:** | None. |
| **ICE #:** | None. |
| **PACTS #:** | 5865713 |
| | |
| **Education:** | No HS Diploma or GED |
| **Marital Status:** | single |
| **Dependents:** | 0 |
| **Citizenship:** | United States |
| **Place of Birth:** | Macy, Nebraska |

**Legal Address:**     5217 South 28th Avenue
Stephen Center Provisional Shelter
Omaha, NE 68107

**Current Address:**     5217 South 28th Avenue
Stephen Center Provisional Shelter
Omaha, NE 68107

**E-mail Address:**     Unknown

**Alias(es):**     Jordan R. Wolfe

2

WOLFE, Jordan

## PART A. THE OFFENSE

### Charge(s) and Conviction(s)

1.  On January 23, 2019, a two-count Indictment was filed in the U. S. District Court for the District of Nebraska naming Jordan Wolfe as the defendant. Count I charged: On or about the 2nd day of December, 2018, within the boundaries of the Omaha Indian Reservation in the District of Nebraska, the defendant JORDAN WOLFE, as an Indian male, did assault C. W., and Indian male, with a dangerous weapon, to wit: a knife, with intent to do bodily harm, in that JORDAN WOLFE, stabbed C. W. in the shoulder and back hip with said knife. In violation of Title 18 United States Code, Sections 113(a)(3) & 1153.

2.  Count II charged On or about the 2nd day of December, 2018, within the boundaries of the Omaha Indian Reservation in the District of Nebraska, the defendant, JORDAN WOLFE, an Indian male, did assault C. W., an Indian male, resulting in serious bodily injury to C. W. in that JORDAN WOLFE, stabbed C. W. in the shoulder and back hip with a knife, causing C. W. extreme physical pain in violation of Title 18 United States Code, Sections 113(a)(3) & 1153.

3.  On January 23, 2019, a federal arrest warrant was issued for the defendant. The warrant was executed on January 25, 2019.

4.  On January 28, 2019, the defendant made his initial appearance and arraignment on the Indictment before U. S. Magistrate Judge Cheryl R. Zwart. The defendant pled not guilty to the two count Indictment, and the government had no objection to his release on conditions.

5.  On June 20, 2019, a Petition For Action on Conditions of Pretrial Release was filed.

6.  On July 15, 2019, the defendant was arrested pursuant to a Petition for Action on conditions of pretrial release.

7.  On July 16, 2019, the defendant made an initial appearance on a Petition for Action on conditions of pretrial release. The release order was revoked.

8.  On July 25, 2019, the defendant appeared before U. S. Magistrate Judge Cheryl R. Zwart on his own motion for pretrial release, and the motion was granted.

9.  On August 9, 2019, the defendant pled guilty to Count 1 of the Indictment charging him with Assault with A Dangerous Weapon with Intent to Do Bodily Harm, in violation of 18 U.S.C. § 113(a)(3).

10. On September 4, 2019, Chief United States District Judge John M. Gerrard signed a Memorandum and Order accepting the defendant's plea of guilty. Acceptance of the plea agreement was deferred until sentencing.

WOLFE, Jordan

### Plea Agreement

11.     In exchange for the defendant's guilty plea, the government will dismiss the remaining counts at the time of sentencing.

12.     Unless otherwise stated, all stipulations set forth in the written Plea Agreement as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

13.     If the defendant is found to be entitled to an offense level reduction under United States Sentencing Guidelines (USSG) § 3E1.1(a) for acceptance of responsibility, the government moves that the Court reduce the offense level by one additional level pursuant to USSG § 3E1.1(b), if that paragraph otherwise applies.

14.     Nothing in the Plea Agreement prevents the defendant from seeking a sentence outside the applicable guideline range.

15.     The government will recommend that the defendant be sentenced to the low end of the advisory guideline range.

16.     The defendant agrees to significantly limit the right to appeal the conviction and sentence in this case.

17.     The defendant agrees to pay a $100 special assessment fee for each felony count of conviction.

### Pretrial Adjustment

18.     Jordan Wolfe was released from custody on January 28, 2019 with conditions to reside with third party custodian Darcie Pappan of Macy, Nebraska, as well as additional conditions including reporting to Pretrial Services, alcohol and drug abstinence, travel restriction, drug treatment and other conditions.

19.     On February 9, 2019, Mr. Wolfe submitted a urine sample that tested positive for marijuana. He admitted using prior to his arrest. A second urine sample was collected on Mr. Wolfe on April 9, 2019. This sample came back diluted. USPO Asplin directed Mr. Wolfe to report to the Alcohol Program in Macy, Nebraska for a follow up urine sample collection. Mr. Wolfe reported to the Alcohol Program on April 29, 2019.  The staff contacted USPO Asplin to advise he tested positive for both alcohol and marijuana. Mr. Wolfe admitting to using both substances around that time.

20.     On May 14, 2019, USPO Asplin directed him to participate in a twelve-week intensive outpatient substance abuse program offered in Macy, Nebraska. He failed to do so. He also submitted a positive drug test for both marijuana and alcohol on April 29, 2019. Mr. Wolfe was directed to call his supervising officer every Tuesday. Mr. Wolfe failed to do this consistently and he was difficult to locate to conduct field checks when in Macy, Nebraska. On approximately June 14, 2019, Mr. Wolfe left a voice message for USPO Asplin, advising he had just returned from being at a sun dance ceremony out of the restricted travel area and he had been there for the last two and a half weeks.  It should be noted he did not

4

WOLFE, Jordan

seek, nor was he granted permission to travel out of the district from USPO Asplin nor the Court.

21.  On July 16, 2019 the defendant appeared before U. S. Magistrate Judge Cheryl R. Zwart to answer to allegations of violations of pretrial release condition. The defendant admitted to the allegations and his pretrial release was revoked.

22.  On July 25, 2019, Mr. Wolfe appeared before U. S. Magistrate Judge Cheryl R. Zwart on a motion for release to Stephen Center provisional shelter and substance abuse treatment program. He has obtained part time employment through Work Staffing of Omaha and he has incurred no known violations of the pretrial release order.

**Codefendants**

23.  None.

**Related Cases**

24.  None.

**The Offense Conduct**

25.  The following is a transcript of the prosecutor's version of the offense as submitted by Assistant U.S. Attorney Tessie L. Smith:

26.  "In the early morning hours of Sunday, December 2, 2018, Jordan Wolfe, a Native American male, stabbed C.W., a Native American male, twice with a kitchen knife causing a 3-centimeter-long laceration on C.W.'s left shoulder blade, a 3-centimeter-long, 2-centimeter-deep laceration to C.W.'s left back hip and causing C.W. extreme pain. The stabbing occurred at the shared home of Jordan Wolfe and C.W. on the Omaha Indian reservation in the District of Nebraska."

/s/ Tessie L. Smith

27.  According to incident reports from Sergeant Benjamin Carrillo of the Omaha Nation Law Enforcement Services and Special Agent Howard Jeffrey of the Federal Bureau of Investigation, the victim reported he had been lying on the floor playing with his one- and three-year-old children. He stated the defendant entered the room looking for something. When he did not find what he was searching for, he grabbed a knife that was laying on a table, stabbed the victim and fled from the house.

28.  The knife used in the offense is described at a 10-inch-long Farberware kitchen knife with a blade that was more than 6 inches long.

29.  The victim informed the investigating officers that he is not sure how the incident ended, but said it was possible that their father, Preston Wolfe, pulled Jordan Wolfe off the victim.

**WOLFE, Jordan**

30. The defendant's interview with officers under Miranda corroborated the victim's account. He advised he thought the victim had gone through his belongings and possibly taken one of his earrings.

31. The defendant told authorities he grabbed the knife and jabbed it toward the victim planning to scare him, but the victim ran toward him. Jordan Wolfe stated he would not have stabbed the victim if he had not been drunk.

32. The defendant informed officers he fled the residence after the incident with the intention to go to their mother's home; however, stopped to sit by a creek to think about the incident.

33. Local authorities reportedly located the defendant by the creek and arrested him twenty minutes after the incident. He had a laceration to his right index finger and told officers he thought he cut himself with the knife used in the altercation.

34. Preston Wolfe, the father of both the victim and the defendant, stated he was at the home at the time of the altercation. He indicated he was in his own bedroom watching television. Mr. Wolfe advised the defendant entered the home and began arguing with the victim. He went to check on them and described the two as wrestling but not throwing punches. Preston Wolfe stated he intervened when the victim was on top of the defendant and had him in a choke hold. The defendant left the room briefly then pushed past Preston Wolfe to re-enter the room where the victim was located. The victim reportedly said, "Dad he's got a knife."  By the time Preston Wolfe entered the room to care for the two young children, the victim said "Dad, I think he stuck me right here," pointing at his side. Preston Wolfe reportedly told the victim to call for the ambulance to come to take a look at the injury. The defendant reportedly put on his shoes and jacket, grabbed a bottle, and ran out the back door in anticipation of police coming.

35. Preston Wolfe informed authorities Jordan Wolfe had been drinking alcohol all day at his mother's home. He did not believe the victim had been drinking.

36. Reports indicate the defendant's BAC following his arrest was .135. Reports indicate the victim's urinalysis at the hospital indicated positive for methamphetamine, amphetamine, opiates, cannabinoids, and ethanol.

37. Medical reports of the victim's treatment administered on December 2, 2018 indicated the victim arrived at the emergency room with a 3-centimeter long by 2-centemeter deep open wound on the left flank and a 3-centimeter long cut on the left shoulder blade. He rated his pain at five on a ten-point scale with ten being the highest. He received ethilone 3-0 suture and placed five interrupted sutures to the wound on his back. The victim received four interrupted vickryl sutures in the muscle and eight interrupted ethilone sutures in the skin of the wound on his left oblique muscle. He was discharged the same day at his own request.

38. After review of the investigative reports further contact with the case agent was unnecessary.

WOLFE, Jordan

39.     As defense counsel declined to have the defendant participate in a presentence investigation interview, he was not questioned about the offense conduct.

**Victim Impact**

40.     The nature of the instant offense or the defendant's criminal history may present a third-party risk to an employer, individual, or group.  If such a risk is identified, the defendant will be given a reasonable opportunity to notify the subject(s).  However, in the event the defendant does not explain the possible risk, the U.S. Probation Officer will notify the appropriate party or parties of the potential harm, loss, or injury that exists.  Presently, no third-party risk is identified.

41.     A statement and explanation of restitution form was sent to the victim in this case. It has not been returned to date.

**Adjustment for Obstruction of Justice**

42.     The probation officer has no information indicating the defendant impeded or obstructed justice.

**Adjustment for Acceptance of Responsibility**

43.     The defendant has clearly demonstrated acceptance of responsibility by pleading guilty and by acknowledging involvement in the instant offense in the Petition to Enter a Plea of Guilty. Additionally, the government was timely notified of the defendant's intention t plead guilty. Pursuant to USSG § 3E1.1(a) and (b), the offense level is reduced three levels.

**Offense Level Computation**

44.     The 2018 Guidelines Manual, incorporating amendments effective November 1, 2018, has been used in assessing this case. In light of the Supreme Court opinion issued January 15, 2005, in United States v. Booker, 125 S. Ct. 738 (2005), the Federal Sentencing Guidelines are now advisory. According to Booker, while not bound by the Sentencing Guidelines, the Court must consult the Guidelines and take them into account when sentencing.

**Count 1**: **Assault with A Dangerous Weapon with Intent to Do Bodily Harm**

45.     **Base Offense Level:** The guideline for a violation of 18 U.S.C. § 113(a)(3) is USSG §2A2.2. The base offense level is 14. USSG §2A2.2(a).                    **14**

46.     **Specific Offense Characteristics:** The weapon used by the defendant was a Farberware kitchen knife that was more than 6 inches in length."  USSG § 2A2.2(b)(2) and USSG § 1B1.1 Application Note 1(B).                    **+4**

47.     **Specific Offense Characteristics:** According to medical reports, the victim's stab wounds included a one-inch long cut to the left scapula, and a one-inch long by one-inch deep stab wound to the left hip area. He received more than twenty-five stitches to the wounds. Upon arrival to the hospital, the victim estimated his pain

WOLFE, Jordan

to be level five out of ten.  USSG § 2A2.2(3)(A) and USSG § 1B1.1, Application
Note 1(E).                                                                                    **+3**

48.  **Victim Related Adjustment:** None.                                                      **0**

49.  **Adjustment for Role in the Offense:** None.                                             **0**

50.  **Adjustment for Obstruction of Justice:** None.                                          **0**

51.  **Adjusted Offense Level (Subtotal):**                                                   **21**

52.  **Chapter Four Enhancement:** None.                                                       **0**

53.  **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance
of responsibility for the offense. Accordingly, the offense level is decreased by two
levels. USSG §3E1.1(a).                                                                        **-2**

The government has motioned for the third level reduction. Pursuant to USSG
§3E1.1(b), the offense level is reduced one additional level.                                  **-1**

54.  **Total Offense Level:**                                                                 **18**

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

55.  The following records have been researched to determine the extent of the defendant's
criminal record: National Crime Information Center (NCIC); Nebraska Crime Information
Service (NCIS). Records were requested from the Omaha Tribal Court for the Pretrial
Services investigation and the response received on January 29, 2018 indicated no records
were found. A request for an updated record check sent to the Omaha Tribal Court in
August 2019 for the presentence investigation has not been received to date.

### Juvenile Adjudication(s)

56.  None.

### Adult Criminal Conviction(s)

57.  None.

### Criminal History Computation

58.  The criminal convictions above result in a subtotal criminal history score of zero.

59.  The total criminal history score is zero. According to the sentencing table in USSG Chapter
5, Part A, a criminal history score of zero establishes a criminal history category of I.

### Other Criminal Conduct

60.  None.

**WOLFE, Jordan**

### Pending Charges

61.    None.

### Other Arrests

62.    None.

## PART C. OFFENDER CHARACTERISTICS

63.    Defense counsel declined to have the defendant participate in an interview. The defendant returned a completed personal history packet after the presentence report was initially submitted to counsel, and no signed releases of information were included.

64.    18 U.S.C. § 3553(a) requires the Court to impose a sentence sufficient, but not greater than necessary, to comply with the statutory sentencing objectives referenced at subsection (a)(2). In order to make that determination, the Court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant [18 U.S.C. § 3553(a)(1)]. The defendant has not provided information regarding his personal history and similar information is not available from other sources. Without the defendant's background information, the Court may not be able to fashion a sentence in accordance with the statutory sentencing objectives.

65.    The following information, unless otherwise noted, was obtained from the Pretrial Services report and interviews, pretrial supervision records, presentence personal history packet, Stephen Center HERO Program records and a collateral interview of the defendant's mother.

### Personal and Family Data

66.    Mr. Wolfe reported he was born in Macy, Nebraska and lived there until age 9 when he entered Circle of Nations boarding school for four years. The defendant advised he moved back to Macy at age 13 and lived with his mother. He indicated he has spent half of his time there and the other half at his father's home until recently. He stated he lived with his mother until two years ago at which time he moved in with his father. Mr. Wolfe indicated his father, Preston Wolfe, lives at Omaha Lodges, #A3, in Macy, Nebraska. He resided there until the instant offense occurred, then lived with his mother until incurring violations of pretrial release.

67.    Jordan Wolfe reported he sees his mother, Darcy Pappan of rural Macy, Nebraska, every day, and he has a good relationship with his father, Preston Wolfe, as well. He advised his siblings include Damon Wolfe (28), Cody Wolfe (23/ victim in the instant offense), Preston Wolfe Jr. (30's), George Parker (27), Ashley Parker (late 20's), and Collette Pappan (30's). Jordan Wolfe described his relationships with each of his siblings as "good" with the exception of Cody Wolfe, which he described as "okay". The defendant indicated he has never been married and he has fathered no children.

**WOLFE, Jordan**

68. Preston Wolfe, the defendant's father, verified Jordan Wolfe's residential and familial history. He confirmed that Cody Wolfe, the alleged victim in this case, currently resides in his home, where the defendant had been living prior to his arrest in this case.

69. The defendant's mother, Darcy Pappan, confirmed she had a room for the defendant. She admitted she had several people living in her five-bedroom home but could provide living space for the defendant. She related she had no issues reporting noncompliance to the Court, assisting the defendant in obtaining part-tine work, and providing supervision at times she is not at work.

70. On September 12, 2019, this officer interviewed Darcy Pappan. She described the defendant as "kind hearted . . . he helps family." Ms. Pappan reported she is hopeful the defendant would reside with her following sentencing. She reported the victim in this case is also her son and lives with their father, Preston Wolfe, in Macy. Ms. Pappan reported she lives in the same five-bedroom home in Macy, Nebraska that she was in during the defendant's initial pretrial release. The people who live there in addition to herself include her son, George Parker, age 27, and four grandchildren (ages 8, 11, 16, and 17).

71. In the presentence personal history packet, the defendant advised he plans to reside with his half-sister, Collette Pappan (35), in the future.

## **Physical Condition**

72. Jordan Wolfe is an Indian male who is 5'9" tall and weighs 140 pounds.

73. Mr. Wolfe reported he is in good health except for being overweight.

## **Mental and Emotional Health**

74. The defendant indicated he has no history of symptoms or diagnoses that required mental health counseling or medications. He advised he has no history of suicidal thoughts or attempts.

75. The defendant endorsed having mood swings in the presentence personal history packet. He denied having any diagnosed mental health issues, trauma, suicidal thoughts or attempts, mental health treatment, or history of taking medications for mental health issues.

76. Records of the Stephen Center HERO Program where the defendant currently resides indicate the defendant presents with symptoms of depression including isolation, lack of energy and flat affect. His test score on PHQ9 indicates a score of seven, indicating mild depression.

## **Substance Abuse**

77. Mr. Wolfe reported to Pretrial Services that he drank alcohol for the first time at age 18 and he most recently drank the Saturday before his arrest in this case. He estimated he drinks alcohol twice monthly, drinking approximately six beers per occasion. The defendant reported to the Pretrial Services Officer his first use of marijuana was at age 17

WOLFE, Jordan

and his most recent use was "two weeks ago". He indicated he uses marijuana approximately twice per month.

78. Records of the Stephen Center HERO Program, including an intake summary report, indicate the defendant reported his first use of marijuana was at age 14 and his last use of it was at age 17. He also reported attending sixty days of outpatient treatment at Omaha Tribe Alcohol Program in Macy, Nebraska, in May 2019. Mr. Wolfe reported he did not successfully complete the program. Collateral records obtained by the defendant's evaluating counselor at Stephen Center revealed the defendant failed to complete a substance abuse evaluation at Omaha Tribe Alcohol Program. He did not attend nor complete any treatment or aftercare. An updated substance abuse evaluation completed by Stephen Center recommended the defendant complete an intensive outpatient substance abuse treatment program.

79. The defendant's mother, Dorothy Pappan, advised she has never seen the defendant intoxicated and she does not think he has an alcohol problem. Dorothy Pappan informed this officer she believes the defendant is "having a hard time" living at Stephen Center in Omaha. She noted "he's been on the Res all his life" and he is struggling with learning the bus system and with finding a job in Omaha. Ms. Pappan noted the defendant has been receiving outpatient drug and alcohol treatment, attending and she believes he attended a parenting class.

80. In the presentence personal history packet, the defendant listed alcohol as a significant substance abuse problem within his family. He listed marijuana as his drug of choice and stated "no" on the question about currently having a past or current alcohol problem. The defendant reported he would benefit from completing substance abuse treatment.

### Educational, Vocational and Special Skills

81. Jordan Wolfe reported he has not completed a high school level education. He advised he had been taking classes at Nebraska Indian Community College (NICC) during the summer of 2018. Mr. Wolfe listed the following goals in his presentence personal history packet: "1. Get a GED, 2. Get a job, 3. Take college class."

82. Dorothy Pappan confirmed the defendant does not have a high school degree. The defendant's mother reported the defendant receives disability compensation due to a learning disability. She noted he could attend GED classes "a mile and half from here."

### Interest Assessment

83. The defendant completed the MnCareers interest assessment that matches the defendant's interests to career clusters based on a Holland Code score, which appears in parentheses below. The Holland Code contains six interest types (Realistic; Investigative; Artistic; Social; Enterprising; and Conventional). The interest types in which the defendant scored highest are provided below, to assist in determining possible career choices. The career options listed below are only examples and are not intended to limit educational and training pursuits.

WOLFE, Jordan

84. **Realistic (5):** People with realistic interests like work activities that include practical, hands-on problems and solutions. The interest assessment matched the defendant's Holland Code to possible careers as a machine operator, construction worker, truck driver, welder, automotive technician, cook, or any other career involving practical, hands on tasks.

85. **Investigative (7):** People with investigative interests like work activities that have to do with ideas and thinking more than with physical activity. The interest assessment matched the defendant's Holland Code to possible careers as an electrician, maintenance and repair technician, computer support specialist, or any other career involving problem solving and critical thinking.

86. **Artistic (4):** People with artistic interests like work activities that deal with the artistic side of things, such as forms, designs, and patterns. The interest assessment matched the defendant's Holland Code to possible careers as a landscaper, graphic designer, interpreter and translator, or any other career involving creativity and freedom of expression.

87. **Social (6):** Social people like work activities that assist others and promote learning and personal development. The interest assessment matched the defendant's Holland Code to possible careers as a wait staff, receptionist, customer service representative, substance abuse counselor, or any other career involving frequent contact with others.

88. The defendant expressed interests in helping others, singing, and dancing. He also expressed a desire for "anything" in vocational training. These interests are supported by the assessment. These interests may be pursued through vocational, occupational, and/or apprenticeship training in the Bureau of Prisons while incarcerated, as well as during the term of supervision.

**Barrier Identification**

89. The Barrier Identification Worksheet was completed during the presentence investigation. The following barriers were identified at this time:

90. Lack of transportation.

91. Lack of access to vocational training.

**Employment Record**

92. May to August 2018: The defendant reported he last worked for the Omaha Tribe, cutting grass earning $300 per month.

93. Mr. Wolfe noted he has also worked for the Omaha Tribe shoveling snow on the reservation and collecting hay bales, but that was seasonal work only.

94. Mr. Wolfe indicated he also receives $700 per month in disability compensation or some other form of assistance, but he was unsure of the exact amount. He stated the disbursements are sent to his mother and she gives him money as needed with the rest

WOLFE, Jordan

going toward her bills. Jordan Wolfe reported he has no financial assets nor liabilities. He indicated his only monthly expenses consist of rent ($100) and groceries ($70).

95.  Ms. Pappan confirmed the defendant has a learning disability.  She confirmed she receives his disability paychecks as she is his payee. She admitted most of his checks go to paying the bills at home. She stated the checks are $750 a month. If released to live with her, he would not be permitted to work at the casino nearby. She indicated he may be able to do some work for the tribe doing housing maintenance. Ms. Pappan stated the defendant did some volunteer work at the Macy Senior Citizen Center where she has worked as a nutritionist for twenty-two years. She was uncertain whether he would be permitted to obtain employment there.

### Military

96.  Jordan Wolfe reported he has no history of military service.

### Financial Condition: Ability to Pay

97.  Records of Equifax were searched for assets and liabilities for Jordan Wolfe; however, no records were found.

### Assets/Liabilities/Cash Flow

98.  The defendant does not claim any income, assets, or liabilities.

### Analysis

99.  It appears the defendant does not have the financial resources to pay a fine in this matter. Nonetheless, the Court is reminded of the Bureau of Prisons' Inmate Financial Responsibility Program, effective March 27, 1987, which assists prisoners through various UNICOR programs in paying special assessments, court-ordered restitution, fines, court costs, and other financial obligations.

100.  Restitution is required because there is an identified victim; however, it has not been requested by the victim to date.

## PART D. SENTENCING OPTIONS

### Custody

101.  **Statutory Provisions:**  The maximum term of imprisonment is 10 years. 18 U.S.C. § 113(a)(3).

102.  **Guideline Provisions:** Based upon a Total Offense Level of 18 and a Criminal History Category I, the guideline imprisonment range is 27  to  33 months.

WOLFE, Jordan

### Impact of Plea Agreement

103. This officer has reviewed the plea agreement in this matter and finds it to be in accordance with the findings of this investigation.

104. Had the defendant pled guilty to count II of the Indictment he would be subject to an additional statutory imprisonment range of 0-10 years. There would be no change to the applicable guideline calculations due to the fact the counts would be grouped together pursuant to USSG § 3D1.2(a).

### Supervised Release

105. **Statutory Provisions:**  The Court may impose a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2).

106. **Guideline Provisions:**  Since the offense is a Class C Felony, the guideline range for a term of supervised release is 1 year to 3 years. USSG §5D1.2(a)(2).

### Probation

107. **Statutory Provisions:**  The defendant is eligible for not less than one nor more than five years' probation because the offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service.

108. **Guideline Provisions:** Since the applicable guideline range is in Zone D of the Sentencing Table, the defendant is ineligible for probation. USSG §5B1.1, comment.(n.2).

### Fines

109. **Statutory Provisions:**  The maximum fine is $250,000. 18 U.S.C. § 3571(b).

110. A special assessment of $100 is mandatory. 18 U.S.C. § 3013.

111. **Guideline Provisions:** The fine range for this offense is from $10,000 to $100,000. USSG §5E1.2(c)(3).

### Restitution

112. **Statutory Provisions:** Pursuant to 18 U.S.C. § 3663A, restitution shall be ordered in this case and will be determined. The victim has made no request for restitution to date.

113. **Guideline Provisions:** Restitution shall be ordered. USSG §5E1.1.

### Denial of Federal Benefits

114. **Statutory Provisions:** Not applicable.

115. **Guideline Provisions:** Not applicable.

WOLFE, Jordan

## PART E. FACTORS THAT MAY WARRANT DEPARTURE

116.    The probation officer has not identified any factors that would warrant a departure from the applicable sentencing guideline range.

## PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

117.    This officer has not identified any factors under 18 U.S.C. 3553(a) that may warrant a variance and imposition of a non-guideline sentence.

Respectfully Submitted,

*Mindy S. Bare*

Mindy Bare
U.S. Probation and Pretrial Services Officer

Reviewed and approved for
guidelines application by:

*Kelly T. Nelson*

For, Brandon T. Maxon
Senior U. S. Probation and Pretrial Services Officer

***Restrictions on Use and Redisclosure of Presentence Investigation Report.*** Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, ***including*** deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.